233 So.2d 377 (1970)
ORANGE COUNTY BOARD OF COUNTY COMMISSIONERS, Petitioner,
v.
Gladys D. BRENEMEN and the Florida Department of Commerce, Division of Labor and Employment Opportunities, Bureau of Workmen's Compensation, Respondents.
No. 39059.
Supreme Court of Florida.
April 1, 1970.
Rehearing Denied April 22, 1970.
*378 Gary L. Stump, of Whittaker, Pyle & Wood, Orlando, for petitioner.
Charles C. Hurt, of Edward H. Hurt, P.A., Orlando, Patrick H. Mears and J. Franklin Garner, Tallahassee, for respondents.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the Order of the Florida Industrial Relations Commission affirming the award of death benefits. The Judge of Industrial Claims and the Full Commission, one member dissenting, found that the activities of the employee on the afternoon of October 9, 1967, resulted in stress and anxiety which elevated his blood pressure causing transient hypertension which in turn acted upon a congenital weakness in the employee's cerebral vascular system and resulted in his death on October 17, 1967.
The facts as stated in the Order of the Judge of Industrial Claims and of the Full Commission are as follows:
"The deceased employee was an assistant warden employed by the Board of County Commissioners of Orange County, Florida. His usual duties consisted of the supervising of the guards at the prison camp, the assigning of work crews, the arranging for the admittance and discharge of prisoners, and the keeping of certain records. Although he was not generally called upon to engage in any manual labor, occasionally he would transport a prisoner to the courthouse and would, as the need presented, assist in the capture of an escaped prisoner.
"On the morning of October 9, 1967, the employee arrived at his employment at the usual hour, somewhere around 4:45 A.M. The events of the day proceeded uneventfully until 2:00 P.M. that afternoon when two prisoners escaped. The deceased employee was notified, and along with the prison's dog handler, he drove to the scene of the escape in an air conditioned stationwagon, accompanied by another guard and a trustee [sic], and set out to capture the two escapees. The site of the escape was approximately 30 to 40 minutes from the prison and at the site the deceased employee discharged the guard, the trustee [sic] and the dogs in the immediate area and commenced *379 circling the search area, sometimes traveling over unpaved areas, but generally traveling upon paved and improved areas, until the escapees were sighted and placed into custody.
"The employee then returned to the prison camp arriving around 4:00 P.M. Upon arriving, the employee indicated to another guard that he was suffering from an awful pain and that it was his feeling that same was caused by the fact that he was unable to urinate as needed during the search for the two escapees.
"He left the prison camp and returned home where he was found by his wife leaning against a refrigerator, with a whitened face, sweating profusely and looking quite ill.
"Shortly thereafter, the employee was transported to the hospital where ultimately there was diagnosed that the employee had suffered an intracranial hemorrhage. The employee continued to live, although in very critical condition, until October 17, 1967."
The employer-carrier contended that at no time during the course of the afternoon did the employee sustain an accident as contemplated by the Workmen's Compensation Act and further that there is no causal relationship between the employee's activities on October 9 and his death occurring on October 17, 1967.
The Judge of Industrial Claims found that the action of stress and anxiety which elevated the employee's blood pressure causing transient hypertension and ultimately resulting in an intracranial hemorrhage resulting in his death, constituted an accident and further that this "accident" arose out of and in the course of his employment. The Full Commission affirmed with one member dissenting on the grounds that claimant had failed to prove a causal relationship between the deceased's employment and the industrial accident. On petition to this Court, the employer-carrier has limited its attack on the order below to the lack of causal relationship between the activities of October 9 and the employee's death on October 17.
The Judge of Industrial Claims and the Full Commission, in awarding the death benefits, relied on the testimony of Dr. Hellinger regarding causal connection. Dr. Hellinger stated:
"Yes. I think there's a good possibility that the situation precipitated the hemorrhage or caused the hemorrhage."
He further stated:
"Well, it's very likely that he  if he had not been subjected to the exertion, the anxiety and the need and the full bladder that he may not have hemorrhaged."
On cross-examination, the doctor admitted that there were other possibilities and that the autopsy that was performed on the deceased did not reveal the cause of the hemorrhage. He further stated that such a hemorrhage can occur without any strenuous activity whatsoever and that it could have been due to a disease of the blood vessel or to high blood pressure unrelated to any employment activities described to him in any hypothetical question.
This Court is committed to the rule that causal connection between an injury and employment must be based upon reasonable medical probability.[1] Causal connection may be proved by lay or by medical testimony but in either event speculation based on mere possibilities is not sufficient. In Gadsden County Board of Public Instruction v. Dickinson,[2] this Court stated the rule as follows:
"There is no presumption that an injury for which compensation is claimed is *380 causally connected to the claimant's employment * * *. A claimant must prove causal connection between his employment and the injury; otherwise, he cannot recover * * *. Even though a claimant is not bound to prove his claim by a preponderance of the evidence * * * speculation or conjecture is not, however, sufficient to establish causal connection between injury and employment, * * *."
The recent decision of this Court in Walker v. McDonnell Aircraft[3] is not to the contrary. In the Walker case, as in the instant case, medical testimony was inconclusive as to the causal relationships between the alleged accident and the resulting injury. In the Walker case, however, there was sufficient lay testimony to show a causal connection between claimant's inhalation of harmful gases and the aggravation of emphysema. We set out the medical testimony in the Walker case merely to show that it did not refute the claim of causal relationship. The medical testimony in that case was that the inhalation of gases "possibly could aggravate" claimant's pre-existing condition. Such testimony is meaningless to establish either that the condition was or was not affected.
In the instant case there is no competent substantial evidence, either medical or lay, to establish a causal relationship between the deceased employee's activities on October 7 and the death allegedly resulting therefrom.
Accordingly, certiorari is granted, the order of the Full Commission is quashed and the cause remanded to the Full Commission with directions to remand the cause to the Judge of Industrial Claims for the entry of an order in accordance with the views expressed herein.
It is so ordered.
ERVIN, C.J., ROBERTS and DREW, JJ., and RAWLS, District Court Judge, concur.
NOTES
[1] Arkin Construction Co. v. Simpkins, 99 So.2d 557 (Fla. 1957); Calvert v. Coral Gables First National Bank, 119 So.2d 33 (Fla. 1960).
[2] 191 So.2d 562, 564 (Fla. 1966).
[3] 231 So.2d 210, Opinion filed January 21, 1970.